Good morning, Your Honors. If it pleases the Court, on behalf of Rosa Munoz-Martinez-Garish-Serain, there's no dispute that Ms. Martinez was a class member of the settlement agreement of the American Baptist Churches v. Thornborough, which was, that agreement was made in 1990. And one of the parts of that agreement states that all eligible class members' deportations are stayed and are not meant to be placed in deportation proceedings. A violation of that was placing Ms. Munoz in a removal proceeding in 1997. She was placed in August of 1997, and shortly thereafter, you had the Nicaraguan Adjustment and Central American Relief Act, or NACRA, as it was enacted in November 19, 1997, permitting class members such as Ms. Martinez to seek cancellation of removal under the former suspension standards. On October 29, 1997, Ms. Martinez was granted voluntary departure by the immigration judge and allowed to leave the United States voluntarily on February 26, 1998. She didn't leave. There's no dispute about that. We had a new set of rules under NACRA, basically for its Ameliorative and Relief Act for Central Americans, as I've stated in my brief and as President Clinton stated to the Attorney General and as Congress enacted this legislation. And they had special rules for motions to reopen. They had to be filed by a particular time. No fees needed to be paid. No documents needed to be given. They had to be filed by September 11, 1998. There's no dispute. My client did all of that. The issue before this Court is why didn't she leave the United States? The whole purpose of the Act was for the motion to reopen of people who hadn't, by the hundreds of thousands, who had not left the United States from 1990. And underlying that is she shouldn't have even been placed in any proceedings. It was a clear violation of her rights. We're asking that the judges' narrow construction of the Act under NACRA should not be upheld. It was irrational, arbitrary. And we're requesting that, as my client is an eligible class member, there's no dispute. She filed her motion standard, and she gave all her documents under the relief and submitted proof that the judges and the BIA order should be vacated. Thank you very much. Let me ask you a question. I'm sorry. Was she given proper notice of what the consequences would be if she didn't depart? I don't know, Your Honor. She wasn't represented at that time. The immigration judge knew very well there was – she was an eligible class member, still proceeded forward in deporting her and knew there was NACRA legislation pending. It was going to be passed in two weeks. She knew this was a lady from El Salvador who had entered the United States, had filed for political asylum, had withdrawn her application for political asylum, but still deported her. I think Judge Fletcher is talking about the Rodonez case, where, without adequate oral warning, when she was given voluntary departure, about the consequences of not, that she may get some relief under Rodonez. And the only thing that I see in the record in the order and summary decision, the immigration judge, he said that she was given oral and written notice. But there seems to be a discussion, and if you look at Rodonez, about what kind of notice she got. I mean, are you familiar with this issue? Your Honor, I'm not addressing that issue because I don't believe it's applicable in this situation because we have special legislation of NACRA for Central Americans, an act that was passed that stated you can't file your motion to reopen. We are admitting she didn't leave. We are also admitting she shouldn't have been in proceedings. Whether she got any notice or not, I think moves away from the central issue is that she filed her motion timely, and it should have been granted. That's all. She had to just put a piece of paper in court, and that's what they said, please. I mean, I can read it out, but it's in the brief, what President Clinton asked the Attorney General to do. He said the purpose of this act is to help these thousands or hundreds of thousands of individuals from Central Europe and Central America to find this relief and go forward with their claim for suspension of deportation. She just wants to file a claim for suspension of deportation. She has a U.S.-born child. She's been in this country continuously since 1990. She is a class member of the ABC agreement. It's part of the record. Thank you. May it please the Court, Margo Nadel for the United States. The only issue in this case is whether or not the immigration judge properly denied the motion to reopen. And the standard for review for a motion to reopen, as this Court I'm sure knows, is abusive discretion. And in this case, there was no abusive discretion because the Ms. Munoz-Martinez was statutorily barred from obtaining the relief that she sought. She was also barred by regulation from obtaining the relief that she sought. The NACARA regulations provide that if one is not eligible for relief under the act, if one is not eligible for suspension of deportation due to a failure to depart the United States, then one cannot seek relief under NACARA. And there's a statutory bar in the voluntary departure section of the Immigration and Nationality Act, which says that if one fails to depart, which she did, that one becomes ineligible for suspension of deportation. That raises the Ordonez issue. And I can't find anything in the record what kind of oral warning was given to her. And as I read Ordonez, it's pretty stringent. And so I don't know what to do with that order that was issued by the IAG saying she was given oral and written notice. In fact, as I think I read Ordonez, even though the written document has everything laid out, you've got to show, according to Ordonez, that she actually got the verbal because that's, they're concerned about people understanding it. Right. Am I in the wrong place here? No, not at all. I mean, there was, or you're correct about the Ordonez case. And there was an oral and written warning given. And if you look in the administrative record where the written warning was given. What did the, did the written record didn't say that she would be ineligible for adjustment of status. Isn't that correct? It said that she would be ineligible for certain forms of relief and that the forms of relief she would become ineligible for, I think, were cancellation of removal and voluntary departure. And there was a third one that, that she would also become ineligible for. But I don't think suspension of deportation was mentioned. No. At that time. That was in the, that actually, that was in the, the order denying the motion to reopen. She was warned, I think, of those forms. Yeah, but according to Ordonez, everything's got to be oral. Was it, was it given orally? Right. I think at the time, the reason why she might not have been warned about it was because Nicara had not yet been passed. Doesn't matter. She would have been ineligible versus Nicara. We're bound by Ordonez. Was she given an oral warning about the right of suspension of deportation? No, she wouldn't have been given an oral warning about the right of suspension of deportation. So why doesn't Ordonez apply? So why shouldn't we use Ordonez? We shouldn't use Ordonez because Ordonez was not argued before this court. And because the petitioner conceded that Ordonez didn't apply. Well, I don't care about that. Well, I, yeah. Yeah. If Ordonez applies, we apply at council. Yes. Let's just, just so we can move on. Let's, let's say, let's suppose that Ordonez applies and we're going to apply it. What happens? If Ordonez were to apply, you would have to look at the oral and written advisories that were given. And we did. And we found that suspension of deportation wasn't orally given. So applying Ordonez, what then, what happens then? If Ordonez were to apply and you were to find that the, that the oral and written warnings weren't sufficient, you could find that, that there were exceptional circumstances. But they wouldn't warrant her failure to depart in any case because she, she still failed to depart even after Nakara, even after Nakara was enacted. And even after her voluntary departure date, she never filed an application. Ordonez sets up its own exception. It's a prophylactic business. It's, it's, and so, I mean, I, I found Ordonez very strongly written and its application very strong. And that's why I asked you what happens because I, unless we miss something from what you said, the record fully assures Ordonez, if it applies, produces a certain result. And I'm just wondering what you think that result would be. I would assume we would just send it back for. Yeah, it would be remanded to, to the immigration court to comply. To process her Nakara application would, I think would be the result. Right. But she would still be, I mean, she would be. But that would happen there. We still send it back. Right. For the lack of warning. Exactly. We would, we would remand the case. A counsel says she was a member of that class. Is that right? Um, she was a class member in that she entered the United States, um, prior to, uh, I think it was June of 1990. Um, and she was from El Salvador, which makes one generally a class member. So what's the consequences of that? Well, if she's a class member and she registered for benefits, which is actually not totally clear from the record that she registered for, um, benefits under the American Baptist churches versus Thornburg settlement. Um, if she was in fact, uh, a registered class member, then she gets certain rights under Nakara, but those rights, um, don't apply if she's subject to a bar for, uh, bar to eligibility as she is here because she failed to depart, um, under an order of voluntary departure. Except for Ordonez. Except for Ordonez. Okay. I think we understand the case. Yeah. I'm on the same page. Okay. Any rebuttal? The Ordonez is your most important case, but I want to give your case away. I'll take anything you're giving me, Your Honor. Thank you. Well, I appreciate that, but I think Ordonez is very important. And when you sat down, you said you weren't relying on it then. Well, I just want to add three facts. On the transcript, please look at transcript 00063. There should be no dispute in this panel's mind. My client is a member of the ABC Club. The INS has recognized her. Did she register? She's registered. They're saying it is. She shouldn't have been put in these proceedings. Now, the catch 22 that counsel just told you is hundreds of thousands of people don't leave. That's why they enacted Nakara and these special rules for motions to reopen. So when she says she's statutory barred, that's not true. Because since 1990, all these individuals didn't leave, and that's why President Clinton and Congress passed Nakara and special rules for motions to reopen. And the motions to reopen had to be filed by September 11th. It's not that you have to file it in El Salvador or in Bulgaria. You have to file it in immigration court. And she did that. The judge made a narrow construction over here. These proceedings should have been terminated before they even began. And that's the part of the ABC agreement which this Court has recognized. And your point is that you're not subject to the statutory bar. Exactly, Your Honor. And her deportation order was an illegal – her removal order was an illegal removal order. And the immigration – She's here to depart is illegal, so we don't have to worry about the oral warning. Is that what you're saying? That's right. Thank you. And I agree if there is – if my argument fails on that, she wasn't given. There is no dispute in that. The facts are clear. She was given no warning of suspension of – deportation of suspension under NACRA. Well, should she have appealed the deportation order? She couldn't appeal the deportation order because she applied for NACRA. She filed her motion to reopen under the legislation that was passed. This is right during the time of NACRA that was passed in November of 97. She was – she took voluntary departure in October. She was meant to leave by February. And then she filed her motion timely. She had to file a motion before September 11, 1998. That's all she had to do to be eligible. But since she was a member of the class and they ordered her deported, couldn't she have appealed that? She – but she wasn't represented, Your Honor. She had no representation at the time of any hearing. What's the title of the representation? The question is couldn't she have appealed it? If she knew she could do that, yes, she could have appealed it. Well, unless we're going to write an opinion that says everybody's got to be represented. If she knew or didn't know, she didn't appeal. She didn't appeal because she applied for NACRA. Yeah. Okay. Thank you. Got you. All right. The matter will stand submitted and we'll come now to Ortiz v. Ashgrove. Good morning, Your Honors.
judges: B. Fletcher, Pregerson, Brunetti